## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| Plaintiffs, | ) | Case No.: 17 C 3326 |
| v. | ) | |
| | ) | Judge Shah |
| RAY ANDERSON ENTERPRISES, INC., an | ) | |
| Illinois corporation, and OLD VETERAN | ) | |
| CONSTRUCTION, INC., an Illinois corporation | ) | |
| formerly d/b/a OLD VETERAN | ) | |
| TUCKPOINTING INC., | ) | |
| Defendants. | ) | |

## MOTION FOR JUDGMENT

Now come Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund,

Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers'

District Council Retiree Health and Welfare Fund, Catherine Wenskus, as Administrator of the

Chicago Funds (collectively hereinafter "Funds"), by and through their attorney, Patrick T.

Wallace, and hereby move this Court to enter judgment on the Settlement Agreement entered

into by the parties in the above referenced matter. In support of this Motion, Plaintiffs state as

follows:

1.     The parties entered into a Settlement Agreement ("Agreement") on November 15,

2021.  The Defendants defaulted on the Settlement Agreement.  Specifically, Defendants failed

to obtain and maintain a $200,000.00 surety bond required by the Agreement, failed to make the

last scheduled wage and benefit contribution payments and failed to make the final "balloon"

payment due for wages and benefit contributions.  See the Declaration of Michael Christopher

attached hereto as Exhibit A, paragraphs 3-5 and Exhibits A-1 and A-2 and the Declaration of

Martin Flanagan attached hereto as Exhibit B, paragraphs 3 and 4 and Exhibits B-1 and B-2.

2.      Defendants were provided with written notice of the default and Plaintiffs have attempted to work with Defendants the parties have been unable to reach agreement on revised terms and Defendants remain in default on the Agreement.

3.      Under the terms of the Agreement, the Funds respectfully request that the Court enter judgment in favor of Plaintiffs and jointly and severally against Ray Anderson Enterprises, Inc. and Old Veteran Construction, Inc. formerly d/b/a Old Veteran Tuckpointing, Inc. in the amount of $1,269,399.62 representing the default amount of $1,690,710.92 less payments of $421,311.30 made to date by Defendants.  Plaintiffs further request Defendants be ordered to pay post-judgment interest on the judgment amount from the date of the judgment until paid in full.

WHEREFORE, Plaintiffs respectfully request that this enter judgment in favor of Plaintiffs and jointly and severally against Ray Anderson Enterprises, Inc. and Old Veteran Construction, Inc. formerly d/b/a Old Veteran Tuckpointing, Inc. in the amount of $1,269,399.62 and order Defendants to pay post-judgment on the judgment amount from the date of the judgment until paid in full.

May 6, 2024                                             Respectfully submitted,
                                                        Laborers' Pension Fund, et al.

                                                        By: /s/ Patrick T. Walace

Patrick T. Wallace
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that she caused a copy of the foregoing

Plaintiffs' for Judgment to be served upon the following person(s) via the Court's Electronic

Notification System on this 6th day of May, 2024.

Scott A. Gore
Peter J. Gillespie
William Daniels
Kevin W. Frey
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654-4688

/s/ Patrick T. Walace

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| Plaintiffs, | ) | Case No.: 17 C 3326 |
| v. | ) | |
| | ) | Judge Shah |
| RAY ANDERSON ENTERPRISES, INC., an | ) | |
| Illinois corporation, and OLD VETERAN | ) | |
| CONSTRUCTION, INC., an Illinois corporation | ) | |
| formerly d/b/a OLD VETERAN | ) | |
| TUCKPOINTING INC., | ) | |
| Defendants. | ) | |

## DECLARATION OF MICHAEL CHRISTOPHER

I, MICHAEL CHRISTOPHER, declare and state as follows:

1.  I am the Lead Field Representative in the Finance Department of the Chicago & Vicinity Laborers' District Council Pension Fund, the Chicago & Vicinity Laborers' District Council Welfare Fund and the Chicago & Vicinity Laborers' District Council Retiree Welfare Fund (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above referenced action. My responsibilities include monitoring compliance of signatory contractors financial obligations set forth in the parties Construction and General Laborers' District Council of Chicago and Vicinity ("Union") collective bargaining agreement. ("Agreement"). This Declaration is submitted in support of the Laborers' Funds' Motion for Judgment against Ray Anderson Enterprises, Inc. and Old Veteran Construction, Inc., formerly d/b/a Old Veteran Tuckpointing Inc. (hereinafter "OVC" or the "Company"). I have personal knowledge regarding the statements contained herein.

2.  I am and have been at all times relevant herein charged with monitoring the

1

Ex. A

Company's compliance with the Agreement and the Funds' respective Agreements and Declarations of Trust. These duties include collecting monthly fringe benefit and union dues reports and payments, reviewing audit reports, calculating liquidated damages assessed against late paid fringe benefit reports and monitoring the settlement payments made by the Company on the Settlement Agreement in this case.

3.    I am familiar with the terms of the Settlement Agreement entered into to resolve this case between the Funds, the Construction and General Laborers' District Council of Chicago and Vicinity and the Company. A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit A-1.

4.    The Company failed to make the scheduled monthly payment of $6,600.00 due to the Funds on September 1, 2023 under Paragraph 2(b) of the Settlement Agreement, failed to make the final payment of $462,032.22 due to the Funds on October 1, 2023 due under Paragraph 2(d) of the Settlement Agreement and failed to obtain and maintain a surety bond in the amount of $200,000.00 as required under Paragraph 5 of the Settlement Agreement.

5.    To date, the Company has only paid $285,800.00 to the Funds on the Settlement Agreement as reflected in the summary of payments made attached hereto as Exhibit A-2.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 5-6-2024

MICHAEL CHRISTOPHER

2

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") by and between Ray Anderson Enterprises, Inc., and Old Veteran Construction, Inc., formerly d/b/a Old Veteran Tuckpointing Inc. (hereinafter "OVC" or the "Company") and the Laborers' Pension Fund, the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, related Funds, and Catherine Wenskus, not individually, but as Administrator of the Funds (collectively referred to hereinafter as the "Funds"), and the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") is hereby entered into;

**WHEREAS**, OVC is and was at all times relevant a party to a Collective Bargaining Agreement with the Union pursuant to which they also agreed to be bound to the terms the Funds' respective Agreements and Declarations of Trust, and were obligated to submit payment of benefit contributions, withhold and remit dues from the paychecks of OVC's employees, and pay wages in accordance with the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, and were further obligated to refrain from subcontracting work to companies or entities that were not signatory with the Union;

**WHEREAS**, the Funds and the Union conducted audits of OVC's books and records for the period of October 1, 2014 through September 30, 2016 and assert that the Company failed to properly pay wages required under the terms of the collective bargaining agreement and pay and submit the appropriate benefit contributions and dues for work performed or subcontracted during the audit period;

**WHEREAS**, the Union filed Grievances (Grievance No. 16-105, Grievance No. 16-106, Grievance No. 16-121 and Grievance No. 18-106, hereinafter referred to as the "Grievances") alleging that OVC failed to pay the appropriate wages and benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the Agreement for the audit period of October 1, 2014 through September 30, 2016;

**WHEREAS**, the Funds filed a case in the United States District Court for the Northern District of Illinois, Eastern Division (*Laborers' Pension Fund et al. v. Ray Anderson Enterprises, Inc. et al*, Case No. 17-cv-3326 pending before the Honorable Judge Manish Shah) (hereinafter the "District Court Case");

**WHEREAS**, OVC has denied all allegations made by the Funds and Union and further denies any liability for such allegations and claims;

**WHEREAS, the** Parties wish to resolve the Grievances and the District Court case without further expense of litigation;

**NOW THEREFORE,** for and in consideration of the mutual promises contained in this Agreement, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  OVC shall pay the total sum of Nine Hundred Thousand and 00/100 Dollars ($900,000.00) plus interest to settle both the outstanding wage and benefit audits for the period of October 1, 2014 through September 30, 2016 with Six Hundred Thousand and 00/100 Dollars

Ex A-1

($600,000.00) plus interest as set forth below to be paid to the Funds to resolve the benefit audit and Three Hundred Thousand and 00/100 Dollars ($300,000.00) to be paid to the District Council as indicated herein to resolve the wage audit. Total payment shall be made no later than October 1, 2023 as indicated below.

2. Payment shall be made in accordance with the following schedule:

    (a) Within seven (7) business days of the execution of this Agreement, OVC shall make a payment of Two-Hundred Thousand and 00/100 Dollars ($200,000), One Hundred and Thirty-Four Thousand and 00/100 Dollars ($134,000) of which will be to address alleged benefit liability to the "Laborers' Pension and Welfare Funds" and deliver payment to the attention of Patrick T. Wallace, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604. OVC shall also deliver payment in the amount of Sixty-Six Thousand and 00/100 Dollars ($66,000.00) from the above $200,000 sum to address alleged wage liability to the payees identified in Exhibit A attached hereto delivering all payment to the attention of Ms. Joanna Barrera at the Union, 999 McClintock Dr., Suite 300, Burr Ridge, IL 60527. Interest at a rate of 12% compounded annually will be assessed on the balance due to the Funds.

    (b) On or before October 1, 2021, OVC shall make a payment of Ten Thousand and 00/100 Dollars ($10,000), Six Thousand Six Hundred and 00/100 Dollars ($6,600.00) of which will be to address alleged benefit liability to the "Laborers' Pension and Welfare Funds" and deliver payment to the attention of Patrick T. Wallace, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604. OVC shall also deliver payment in the amount of Three Thousand Four Hundred and 00/100 Dollars ($3,400.00) from the above $10,000 sum to address alleged wage liability to the payees identified in Exhibit A attached hereto delivering all payment to the attention of Ms. Joanna Barrera at the Union, 999 McClintock Dr., Suite 300, Burr Ridge, IL 60527.

    (c) As of the first day of each month thereafter between October 1, 2021 and September 1, 2023, OVC will make an additional twenty-three (23) monthly payments of Ten Thousand and 00/100 Dollars ($10,000) in accordance with the terms under (b) above.

    (d) On or before October 1, 2023, OVC shall make a final payment of Five Hundred Seventy-Eight Thousand Four Hundred Thirty-Two and 22/100 Dollars ($578,432.22), Four Hundred Twenty-Six Thousand Thirty-Two and 22/100 Dollars ($426,032.22) of which will be to address alleged benefit liability to the "Laborers' Pension and Welfare Funds" and deliver payment to the attention of Patrick T. Wallace, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604. OVC shall also deliver payment in the amount of One Hundred Fifty-Two Thousand Four Hundred and 00/100 Dollars ($152,400.00) from the above $578,432.22 sum to address alleged wage liability to the payees identified in Exhibit A attached hereto delivering all

payment to the attention of Ms. Joanna Barrera at the Union, 999 McClintock Dr., Suite 300, Burr Ridge, IL 60527.

3.   With regard to Exhibit A, checks for Union dues shall be made payable to the "Laborers' Work Dues Fund" and checks for wage audit costs (as provided for under Paragraphs 1 and 2 above) shall be made payable to the "Laborers' District Council" and delivered to the attention of Ms. Joanna Barrera at the Union's office. All wage payment shall be made payable to the individuals identified in Exhibit A with the Company withholding and remitting the appropriate taxing agencies and withholding and remitting the appropriate dues to the District Council. The net proceeds of the wages, after deductions for taxes including, but not limited to, all required contributions for state and local tax, social security, Medicare, dues and all other appropriate withholdings, shall be issued to the individuals identified in Exhibit A and delivered to the attention of Ms. Joanna Barrera at the Union office for distribution. In the event the payees identified in Exhibit A do not come forward to claim and receive payment of their wage settlement, the Union shall reserve the right to return the payments to the Company and direct the monies to be redistributed to other payees. Any employee receiving payment for wages pursuant to the Agreement shall sign a release in favor of OVC releasing any and all claims they may have by virtue of the allegations made through the audits and the Grievances.

4.   This Settlement Agreement shall be conditioned upon the simultaneous execution of an accurate Declaration and Agreement of Indemnification supporting adjustment of the audits and verifying wage and benefit contribution compliance which is hereby incorporated herein. Company President and sole shareholder Jose Maldonado shall also contemporaneously sign a Guaranty of Payment and Indemnification Agreement ("Guaranty") agreeing to personally guaranty the amounts due on this Settlement Agreement as well as any amounts that are or come due from the Company up through the period of this Settlement Agreement or until paid in full, whichever is later, including but not limited to any unpaid wages, benefit contributions, interest, liquidated damages, audit costs, or any other amounts required to be paid under the Company's Agreements with the Union. This settlement is also conditioned on both the Company and Jose Maldonado contemporaneously entering into commercial security agreements providing the Funds and the Union with blanket, continuing security interests in all assets to secure the amounts owed under the terms of this Settlement Agreement as well as any amounts that are or come due from the Company up through the period of this Settlement Agreement or until paid in full, whichever is later, including but not limited to any unpaid wages, benefit contributions, interest, liquidated damages, audit costs, or any other amounts required to be paid under the Company's Agreements with the Union. The Funds and the Union will file a UCC with the Illinois Secretary of State but will file a termination of the UCC after all amounts due under this Settlement Agreement as well as any amounts that are or come due from the Company up through the period of this Settlement Agreement or until paid in full, whichever is later, including but not limited to any unpaid wages, benefit contributions, interest, liquidated damages, audit costs, or any other amounts required to be paid under the Company's Agreements with the Union are paid in full as verified by an audit.

5.   OVC shall remain in good standing with the Union for the payment period of this Settlement Agreement including, but not limited to the timely submission and payment of benefit and dues reports as they come due and shall obtain and maintain a Two Hundred Thousand and 00/100 dollar ($200,000.00) surety bond to the benefit of the Funds and the Union for the duration of the payment period scheduled in this Agreement to insure payment of future wages and benefit contributions. If OVC fails to stay in good standing or obtain and maintain a $200,000.00 surety bond, OVC will be in default on this Agreement.

6.      Upon the signing of this Settlement Agreement, the Parties shall file a Stipulation in the District Court case requesting that the matter be dismissed without prejudice and having the Court retain jurisdiction and enforce the terms of this settlement up and thorough December 31, 2023. Thereafter, the Parties will request the matter be dismissed with prejudice for alleged benefit contribution and wage liability as to the audit period of October 1, 2014 through September 30, 2016, except that the dismissal shall be without prejudice for the limited purpose of allowing OVC, the Funds and Union the right to enforce the terms of this Agreement and the Declaration and Agreement of Indemnification on which settlement is conditioned and shall further be without prejudice to the Funds' and Union's right to conduct audits of OVC's books and records for the period of October 1, 2016 forward and to collect any amounts revealed as due and owing including benefit contributions, dues, wages, interest, liquidated damages and audit costs alleged due and owing pursuant to work performed or sub-contracted by the Company thereafter.

7.      Upon receiving a final payment per this Agreement, the Union has agreed to withdraw any and all grievances concerning OVC's alleged failure to pay the appropriate wages and benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the Agreement for the audit period of October 1, 2014 through September 30, 2016 with prejudice except that nothing shall release, waive or discharge the rights of the Union and the Funds to enforce the terms of the Declaration and Agreement of Indemnification and Guaranty entered into as part of this settlement. This withdrawal includes all grievances related to the audit period of October 1, 2014 through September 30, 2016. Further, upon payment of the initial amount described under Paragraph 2(a) above, OVC's name shall be removed from any lists, letters or documents issued by the Union alleging that OVC is not in good standing with the Union. OVC will only be placed on the delinquency list if they fall into default on this settlement agreement or fail to submit and stay current on the submission of benefit and dues reports as they come due including any delinquencies revealed in an audit.

8.      Upon payment by OVC of all amounts due under this Agreement, the Union further agrees to release and forever discharge the Company from any and all claims, liabilities, suits, grievances, discrimination or other charges arising out of any federal, state, or local constitution, statute, regulation, rule, ordinance, public policy, contract, common law or any other claims the Union may have concerning OVC's alleged failure to pay the appropriate wages and benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the Agreement for the audit period of October 1, 2014 through September 30, 2016. This release includes all grievances for the audit period of October 1, 2014 through September 30, 2016. Nothing herein shall release, waive or discharge the rights of the Union and the Funds to enforce the terms of the Declaration and Agreement of Indemnification and Guaranty entered into as part of this settlement.

Upon payment by OVC of all amounts due under this Agreement, the Fund, its Board of Trustees, employees, administrators, attorneys and successors and assigns (the "Fund Releasors") hereby releases and forever discharges OVC, its owners, and each of their representatives, predecessors, successors, partners, receivers, attorneys, consultants, employees, agents, affiliates, parent companies, subsidiaries, business units, successors, assigns, heirs, administrators and executors, including all trades or businesses under common control with it (within the meaning of 29 U.S.C. Section 1301(b)(1)) from any and all claims, contentions, demands, causes of action (at law or in equity), suits, debts, dues, sums of money, accounts, reckonings, extents, executions, demands, liens, agreements, notes, obligations, or liabilities of any nature, character or description whatsoever, whether known or unknown, contingent or matured, which the Fund Releasors have

had or may now or hereafter have from the beginning of time to the date hereof with respect to the Audit except that nothing shall release, waive or discharge the rights of the Union and the Funds to enforce the terms of the Declaration and Agreement of Indemnification and Guaranty entered into as part of this settlement. Further, upon payment of the initial amount described under Paragraph 2(a) above, OVC's name shall be removed from any lists, letters or documents issued by the Fund alleging that OVC is delinquent in payments. OVC will only be placed on the delinquency list if they fall into default on this settlement agreement or fail to submit and stay current on the submission of benefit and dues reports as they come due including any delinquencies revealed in an audit.

9.      Upon payment by OVC of all amounts due under this Agreement, the Company releases, waives, and discharges the Funds, the Union, their officers, trustees, employees, and affiliated local unions from any claim they may have against the Funds, the Union, their officers, trustees, attorneys, employees, and affiliated local unions, whether or not said claims have been litigated, subject of the lawsuit, or could have been raised in the litigation for the period October 1, 2014 through September 30, 2016.

10.     The Parties acknowledge and agree that the terms and conditions of this Agreement do not represent any admission of wrongdoing or liability by the Company. The Parties also acknowledge and agree that this Agreement is entered into on a non-precedent setting basis and neither this Agreement, nor any matters giving rise to the matters set forth in this Agreement shall be used by the Union against the Company or introduced as evidence by the Union or by any employee of the Company or introduced by the Union in any other matter in which the Union or Company is a party, except to enforce the terms of this Agreement.

11.     The Parties agree and acknowledge that the terms of this Agreement contain a full resolution of these matters and that this Agreement was entered into freely and voluntarily by all Parties.

12.     Notwithstanding the above, the Union and the Funds shall retain all rights to exercise its rights and powers under the Declaration and Agreement of Indemnification as appropriate.

13.     No later than the first of each month OVC must complete and submit monthly Job Notices on forms provided by the Funds. The Job Notices shall contain jobs awarded and jobs on which OVC is currently working. The Job Notices shall be emailed to Patrick T. Wallace (patrickw@chilpwf.com) and jbarrera@liunachicago.org. OVC shall provide the Job Notices for the next 12 months and failure to timely provide accurate Job Notices shall constitute a default of this Agreement.

14.     Default.

        (a)     Should OVC fail to make any payment as provided under Paragraph 1 and 2 above or fail to remain in good standing including the timely submission and payment of benefit and dues reports or obtaining and maintaining a $200,000.00 surety bond as identified in Paragraph 5 above, the Funds and/or Union shall notify the Company in writing of its failure to make payment and demand such payment. If payment is not received within thirty (30) days of the date of notice, OVC is in default of its obligations under

this Agreement, and the Funds and./or Union may reinstate their District Court Case or Grievances against OVC to collect the balance of One Million Six Hundred Ninety Thousand Seven Hundred Ten and 92/100 Dollars ($1,690,710.92) due from OVC minus payments made by OVC pursuant to this Agreement, if any.

(b)     If OVC fails to correct the default within sixty (60) days, OVC agrees that the amount of $1,690,710.92 minus payments made to date shall become due and may be immediately collected from OVC by the Funds and Union.

15.     This Agreement shall be binding upon the heirs, successors, and assigns of the parties hereto.  However, neither this Agreement nor its terms shall be construed as, or relied upon as, precedent as to the application of the relevant collective bargaining agreements or future dealings between the parties.

16.     The persons signing below represent that they are authorized to execute this Agreement and bind their respective entities and themselves to the terms hereof.

17.     This Agreement constitutes and represents the complete and entire agreement between the Parties. The terms of this Agreement may not be altered, modified, or supplemented except by a writing signed by each of the Parties.

18.     The Parties confirm and agree that: (a) this Agreement is the result of negotiation and compromise; (b) in interpreting this Agreement, no Party shall be considered to be the drafter of it; (c) no language shall be strictly construed against any Party; and (d) this Agreement shall be interpreted consistent with the ordinary and reasonable meaning of the words used in it.

19.     The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, final settlement and release of all claims, complaints, grievances or disputes covered by this agreement in the absence of fraud or duress.

20.     This Agreement may be executed in multiple counter parts with a facsimile copy signature or scanned/emailed copy signature as binding as the original.

21.     This Agreement shall be construed in accordance with Illinois law without regard to choice of laws, except as preempted by applicable federal law.

**For the Laborers' Pension Fund, the Laborers' Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, not individually but as Administrator of the Funds.**

**[SIGNATURES ON FOLLOWING PAGE]**

Catherine Wenskus, Administrator   Date: 11/15/21

For the Construction and General Laborers' District Council of Chicago and Vicinity

Martin Flanagan   Date: 11-15-21

Ray Anderson Enterprises, Inc., and Old Veteran Construction, Inc., formerly d/b/a Old Veteran Tuckpointing Inc.

Jose Maldonado   Date: 10-28-21

Page 7 of 7

**CODE #  20101  Ray Anderson/Old Veteran**

INSTALLMENT PLAN: 10/1/2014 - 9/30/2016 Audit + SSA audit (not yet received)

NO. OF INSTALLMENT PAYMENTS:  24

Deposit

| Transaction # | Deposit Date | Type | Check No. | Deposit Amount | Month | Description | WELFARE PP | WELFARE MISC | RETIREE WELFARE PP | RETIREE WELFARE MISC | PENSION PP | PENSION MISC | (1) DEPOSITORY FUNDS | ALLOCATION TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1667144 | 11/2/21 | EXC | 12495 | 134,000.00 | | Down Payment | | | | | 134,000.00 | | | 134,000.00 |
| 1674267 | 02/21/22 | EXC | 88586 | 33,000.00 | | Pymt 1 - 5 | | | | | 33,000.00 | | | 33,000.00 |
| 1675166 | 03/04/22 | EXC | 88649 | 6,600.00 | | Pymt 6 | | | | | 6,600.00 | | | 6,600.00 |
| 1677875 | 04/08/22 | EXC | 88770 | 6,600.00 | | Pymt 7 | | | | | 6,600.00 | | | 6,600.00 |
| 1678669 | 04/19/22 | EXC | | | | Money transferred to Dues | | | | | (13,541.70) | | 13,541.70 | ' |
| 1681514 | 05/23/22 | EXC | 88942 | 6,600.00 | | Pymt 8 | | | | | 6,600.00 | | | 6,600.00 |
| 4143470 | 06/16/22 | EXC | 89015 | 6,600.00 | | Pymt 9 | | | | | 6,600.00 | | | 6,600.00 |
| 4164767 | 07/07/22 | EXC | 89166 | 6,600.00 | | Pymt 10 | | | | | 6,600.00 | | | 6,600.00 |
| 4189483 | 08/17/22 | EXC | 89286 | 6,600.00 | | Pymt 11 | | | | | 6,600.00 | | | 6,600.00 |
| 4209624 | 09/09/22 | EXC | 89426 | 6,600.00 | | Pymt 12 Applied to 5/16 & 6/16 | | | | | 6,600.00 | | | 6,600.00 |
| 4235715 | 10/18/22 | EXC | 89561 | 6,600.00 | | Pymt 13 | | | | | 6,600.00 | | | 6,600.00 |
| 4281973 | 12/01/22 | EXC | 89694 | 6,600.00 | | Pymt 14 | | | | | 6,600.00 | | | 6,600.00 |
| 4289637 | 12/27/22 | EXC | 89782 | 6,600.00 | | Pymt 15 | | | | | 6,600.00 | | | 6,600.00 |
| 4304765 | 01/12/23 | EXC | 89857 | 6,600.00 | | Pymt 16 | | | | | 6,600.00 | | | 6,600.00 |
| 4327526 | 02/09/23 | EXC | 89928 | 6,600.00 | | Pymt 17 | | | | | 6,600.00 | | | 6,600.00 |
| 4359882 | 04/05/23 | EXC | 90032 | 6,600.00 | | Pymt 18 | | | | | 6,600.00 | | | 6,600.00 |
| 4396791 | 05/23/23 | EXC | 90121 | 6,600.00 | | Pymt 19 | | | | | 6,600.00 | | | 6,600.00 |
| 4416642 | 06/09/23 | EXC | 90189 | 13,200.00 | | Pymt 20 & 21 | | | | | 13,200.00 | | | 13,200.00 |
| 4440001 | 07/14/23 | EXC | 90248 | 6,600.00 | | Pymt 22 | | | | | 6,600.00 | | | 6,600.00 |
| 4464125 | 08/22/23 | EXC | 90334 | 6,600.00 | | Pymt 23 | | | | | 6,600.00 | | | 6,600.00 |
| **TOTALS** | | | | **285,800.00** | | | ' | ' | ' | ' | **272,258.30** | ' | **13,541.70** | **285,800.00** |

Ex A-2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| Plaintiffs, | ) | Case No.: 17 C 3326 |
| v. | ) | |
| | ) | Judge Shah |
| RAY ANDERSON ENTERPRISES, INC., an | ) | |
| Illinois corporation, and OLD VETERAN | ) | |
| CONSTRUCTION, INC., an Illinois corporation | ) | |
| formerly d/b/a OLD VETERAN | ) | |
| TUCKPOINTING INC., | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF MARTIN FLANAGAN</u>

I, MARTIN FLANAGAN, declare and state as follows:

1.      My name is Martin Flanagan and I am Assistant Business Manager and Director of Grievances for the Construction and General Laborers' District Council of Chicago and Vicinity ("District Council"). This statement is submitted in support of Plaintiffs' Motion for Judgment in the above-captioned case. I have knowledge regarding the matters stated herein.

2.      I am familiar with the terms of the Settlement Agreement entered into to resolve this case between the Funds, the Construction and General Laborers' District Council of Chicago and Vicinity and Ray Anderson Enterprises, Inc. and Old Veteran Construction, Inc., formerly d/b/a Old Veteran Tuckpointing Inc. (the "Company"). A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit B-1.

3.      The Company failed to make the scheduled monthly payments of $12,088.70 due on the wage portion of the settlement through September 1, 2023 under Paragraph 2(b) of the Settlement Agreement, failed to make the final payment of

1

Ex B

$152,400.00 due on the wage portion of the settlement on October 1, 2023 due under Paragraph 2(d) of the Settlement Agreement and failed to obtain and maintain a surety bond in the amount of $200,000.00 as required under Paragraph 5 of the Settlement Agreement.

4.      To date, the Company has only paid $135,511.30 of the wage portion of the settlement as reflected in the summary of payments made attached hereto as Exhibit B-2.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 5-6-2023

Martin Flanagan

2

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") by and between Ray Anderson Enterprises, Inc., and Old Veteran Construction, Inc., formerly d/b/a Old Veteran Tuckpointing Inc. (hereinafter "OVC" or the "Company") and the Laborers' Pension Fund, the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, related Funds, and Catherine Wenskus, not individually, but as Administrator of the Funds (collectively referred to hereinafter as the "Funds"), and the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") is hereby entered into;

**WHEREAS**, OVC is and was at all times relevant a party to a Collective Bargaining Agreement with the Union pursuant to which they also agreed to be bound to the terms the Funds' respective Agreements and Declarations of Trust, and were obligated to submit payment of benefit contributions, withhold and remit dues from the paychecks of OVC's employees, and pay wages in accordance with the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, and were further obligated to refrain from subcontracting work to companies or entities that were not signatory with the Union;

**WHEREAS**, the Funds and the Union conducted audits of OVC's books and records for the period of October 1, 2014 through September 30, 2016 and assert that the Company failed to properly pay wages required under the terms of the collective bargaining agreement and pay and submit the appropriate benefit contributions and dues for work performed or subcontracted during the audit period;

**WHEREAS,** the Union filed Grievances (Grievance No. 16-105, Grievance No. 16-106, Grievance No. 16-121 and Grievance No. 18-106, hereinafter referred to as the "Grievances") alleging that OVC failed to pay the appropriate wages and benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the Agreement for the audit period of October 1, 2014 through September 30, 2016;

**WHEREAS**, the Funds filed a case in the United States District Court for the Northern District of Illinois, Eastern Division (*Laborers' Pension Fund et al. v. Ray Anderson Enterprises, Inc. et al*, Case No. 17-cv-3326 pending before the Honorable Judge Manish Shah) (hereinafter the "District Court Case");

**WHEREAS**, OVC has denied all allegations made by the Funds and Union and further denies any liability for such allegations and claims;

**WHEREAS, the** Parties wish to resolve the Grievances and the District Court case without further expense of litigation;

**NOW THEREFORE,** for and in consideration of the mutual promises contained in this Agreement, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     OVC shall pay the total sum of Nine Hundred Thousand and 00/100 Dollars ($900,000.00) plus interest to settle both the outstanding wage and benefit audits for the period of October 1, 2014 through September 30, 2016 with Six Hundred Thousand and 00/100 Dollars

Ex B-1

($600,000.00) plus interest as set forth below to be paid to the Funds to resolve the benefit audit and Three Hundred Thousand and 00/100 Dollars ($300,000.00) to be paid to the District Council as indicated herein to resolve the wage audit. Total payment shall be made no later than October 1, 2023 as indicated below.

2. Payment shall be made in accordance with the following schedule:

    (a) Within seven (7) business days of the execution of this Agreement, OVC shall make a payment of Two-Hundred Thousand and 00/100 Dollars ($200,000), One Hundred and Thirty-Four Thousand and 00/100 Dollars ($134,000) of which will be to address alleged benefit liability to the "Laborers' Pension and Welfare Funds" and deliver payment to the attention of Patrick T. Wallace, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604. OVC shall also deliver payment in the amount of Sixty-Six Thousand and 00/100 Dollars ($66,000.00) from the above $200,000 sum to address alleged wage liability to the payees identified in Exhibit A attached hereto delivering all payment to the attention of Ms. Joanna Barrera at the Union, 999 McClintock Dr., Suite 300, Burr Ridge, IL 60527. Interest at a rate of 12% compounded annually will be assessed on the balance due to the Funds.

    (b) On or before October 1, 2021, OVC shall make a payment of Ten Thousand and 00/100 Dollars ($10,000), Six Thousand Six Hundred and 00/100 Dollars ($6,600.00) of which will be to address alleged benefit liability to the "Laborers' Pension and Welfare Funds" and deliver payment to the attention of Patrick T. Wallace, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604. OVC shall also deliver payment in the amount of Three Thousand Four Hundred and 00/100 Dollars ($3,400.00) from the above $10,000 sum to address alleged wage liability to the payees identified in Exhibit A attached hereto delivering all payment to the attention of Ms. Joanna Barrera at the Union, 999 McClintock Dr., Suite 300, Burr Ridge, IL 60527.

    (c) As of the first day of each month thereafter between October 1, 2021 and September 1, 2023, OVC will make an additional twenty-three (23) monthly payments of Ten Thousand and 00/100 Dollars ($10,000) in accordance with the terms under (b) above.

    (d) On or before October 1, 2023, OVC shall make a final payment of Five Hundred Seventy-Eight Thousand Four Hundred Thirty-Two and 22/100 Dollars ($578,432.22), Four Hundred Twenty-Six Thousand Thirty-Two and 22/100 Dollars ($426,032.22) of which will be to address alleged benefit liability to the "Laborers' Pension and Welfare Funds" and deliver payment to the attention of Patrick T. Wallace, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604. OVC shall also deliver payment in the amount of One Hundred Fifty-Two Thousand Four Hundred and 00/100 Dollars ($152,400.00) from the above $578,432.22 sum to address alleged wage liability to the payees identified in Exhibit A attached hereto delivering all

payment to the attention of Ms. Joanna Barrera at the Union, 999 McClintock Dr., Suite 300, Burr Ridge, IL 60527.

3.    With regard to Exhibit A, checks for Union dues shall be made payable to the "Laborers' Work Dues Fund" and checks for wage audit costs (as provided for under Paragraphs 1 and 2 above) shall be made payable to the "Laborers' District Council" and delivered to the attention of Ms. Joanna Barrera at the Union's office.  All wage payment shall be made payable to the individuals identified in Exhibit A with the Company withholding and remitting the appropriate taxing agencies and withholding and remitting the appropriate dues to the District Council.  The net proceeds of the wages, after deductions for taxes including, but not limited to, all required contributions for state and local tax, social security, Medicare, dues and all other appropriate withholdings, shall be issued to the individuals identified in Exhibit A and delivered to the attention of Ms. Joanna Barrera at the Union office for distribution.  In the event the payees identified in Exhibit A do not come forward to claim and receive payment of their wage settlement, the Union shall reserve the right to return the payments to the Company and direct the monies to be redistributed to other payees. Any employee receiving payment for wages pursuant to the Agreement shall sign a release in favor of OVC releasing any and all claims they may have by virtue of the allegations made through the audits and the Grievances.

4.    This Settlement Agreement shall be conditioned upon the simultaneous execution of an accurate Declaration and Agreement of Indemnification supporting adjustment of the audits and verifying wage and benefit contribution compliance which is hereby incorporated herein. Company President and sole shareholder Jose Maldonado shall also contemporaneously sign a Guaranty of Payment and Indemnification Agreement ("Guaranty") agreeing to personally guaranty the amounts due on this Settlement Agreement as well as any amounts that are or come due from the Company up through the period of this Settlement Agreement or until paid in full, whichever is later, including but not limited to any unpaid wages, benefit contributions, interest, liquidated damages, audit costs, or any other amounts required to be paid under the Company's Agreements with the Union.  This settlement is also conditioned on both the Company and Jose Maldonado contemporaneously entering into commercial security agreements providing the Funds and the Union with blanket, continuing  security interests in all assets to secure the amounts owed under the terms of this Settlement Agreement as well as any amounts that are or come due from the Company up through the period of this Settlement Agreement or until paid in full, whichever is later, including but not limited to any unpaid wages, benefit contributions, interest, liquidated damages, audit costs, or any other amounts required to be paid under the Company's Agreements with the Union.  The Funds and the Union will file a UCC with the Illinois Secretary of State but will file a termination of the UCC after all amounts due under this Settlement Agreement as well as any amounts that are or come due from the Company up through the period of this Settlement Agreement or until paid in full, whichever is later, including but not limited to any unpaid wages, benefit contributions, interest, liquidated damages, audit costs, or any other amounts required to be paid under the Company's Agreements with the Union are paid in full as verified by an audit.

5.    OVC shall remain in good standing with the Union for the payment period of this Settlement Agreement including, but not limited to the timely submission and payment of benefit and dues reports as they come due and shall obtain and maintain a Two Hundred Thousand and 00/100 dollar ($200,000.00) surety bond to the benefit of the Funds and the Union for the duration of the payment period scheduled in this Agreement to insure payment of future wages and benefit contributions.  If OVC fails to stay in good standing or obtain and maintain a $200,000.00 surety bond, OVC will be in default on this Agreement.

6.    Upon the signing of this Settlement Agreement, the Parties shall file a Stipulation in the District Court case requesting that the matter be dismissed without prejudice and having the Court retain jurisdiction and enforce the terms of this settlement up and thorough December 31, 2023. Thereafter, the Parties will request the matter be dismissed with prejudice for alleged benefit contribution and wage liability as to the audit period of October 1, 2014 through September 30, 2016, except that the dismissal shall be without prejudice for the limited purpose of allowing OVC, the Funds and Union the right to enforce the terms of this Agreement and the Declaration and Agreement of Indemnification on which settlement is conditioned and shall further be without prejudice to the Funds' and Union's right to conduct audits of OVC's books and records for the period of October 1, 2016 forward and to collect any amounts revealed as due and owing including benefit contributions, dues, wages, interest, liquidated damages and audit costs alleged due and owing pursuant to work performed or sub-contracted by the Company thereafter.

7.    Upon receiving a final payment per this Agreement, the Union has agreed to withdraw any and all grievances concerning OVC's alleged failure to pay the appropriate wages and benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the Agreement for the audit period of October 1, 2014 through September 30, 2016 with prejudice except that nothing shall release, waive or discharge the rights of the Union and the Funds to enforce the terms of the Declaration and Agreement of Indemnification and Guaranty entered into as part of this settlement. This withdrawal includes all grievances related to the audit period of October 1, 2014 through September 30, 2016. Further, upon payment of the initial amount described under Paragraph 2(a) above, OVC's name shall be removed from any lists, letters or documents issued by the Union alleging that OVC is not in good standing with the Union. OVC will only be placed on the delinquency list if they fall into default on this settlement agreement or fail to submit and stay current on the submission of benefit and dues reports as they come due including any delinquencies revealed in an audit.

8.    Upon payment by OVC of all amounts due under this Agreement, the Union further agrees to release and forever discharge the Company from any and all claims, liabilities, suits, grievances, discrimination or other charges arising out of any federal, state, or local constitution, statute, regulation, rule, ordinance, public policy, contract, common law or any other claims the Union may have concerning OVC's alleged failure to pay the appropriate wages and benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the Agreement for the audit period of October 1, 2014 through September 30, 2016. This release includes all grievances for the audit period of October 1, 2014 through September 30, 2016. Nothing herein shall release, waive or discharge the rights of the Union and the Funds to enforce the terms of the Declaration and Agreement of Indemnification and Guaranty entered into as part of this settlement.

Upon payment by OVC of all amounts due under this Agreement, the Fund, its Board of Trustees, employees, administrators, attorneys and successors and assigns (the "Fund Releasors") hereby releases and forever discharges OVC, its owners, and each of their representatives, predecessors, successors, partners, receivers, attorneys, consultants, employees, agents, affiliates, parent companies, subsidiaries, business units, successors, assigns, heirs, administrators and executors, including all trades or businesses under common control with it (within the meaning of 29 U.S.C. Section 1301(b)(1)) from any and all claims, contentions, demands, causes of action (at law or in equity), suits, debts, dues, sums of money, accounts, reckonings, extents, executions, demands, liens, agreements, notes, obligations, or liabilities of any nature, character or description whatsoever, whether known or unknown, contingent or matured, which the Fund Releasors have

had or may now or hereafter have from the beginning of time to the date hereof with respect to the Audit except that nothing shall release, waive or discharge the rights of the Union and the Funds to enforce the terms of the Declaration and Agreement of Indemnification and Guaranty entered into as part of this settlement. Further, upon payment of the initial amount described under Paragraph 2(a) above, OVC's name shall be removed from any lists, letters or documents issued by the Fund alleging that OVC is delinquent in payments. OVC will only be placed on the delinquency list if they fall into default on this settlement agreement or fail to submit and stay current on the submission of benefit and dues reports as they come due including any delinquencies revealed in an audit.

9.    Upon payment by OVC of all amounts due under this Agreement, the Company releases, waives, and discharges the Funds, the Union, their officers, trustees, employees, and affiliated local unions from any claim they may have against the Funds, the Union, their officers, trustees, attorneys, employees, and affiliated local unions, whether or not said claims have been litigated, subject of the lawsuit, or could have been raised in the litigation for the period October 1, 2014 through September 30, 2016.

10.    The Parties acknowledge and agree that the terms and conditions of this Agreement do not represent any admission of wrongdoing or liability by the Company. The Parties also acknowledge and agree that this Agreement is entered into on a non-precedent setting basis and neither this Agreement, nor any matters giving rise to the matters set forth in this Agreement shall be used by the Union against the Company or introduced as evidence by the Union or by any employee of the Company or introduced by the Union in any other matter in which the Union or Company is a party, except to enforce the terms of this Agreement.

11.    The Parties agree and acknowledge that the terms of this Agreement contain a full resolution of these matters and that this Agreement was entered into freely and voluntarily by all Parties.

12.    Notwithstanding the above, the Union and the Funds shall retain all rights to exercise its rights and powers under the Declaration and Agreement of Indemnification as appropriate.

13.    No later than the first of each month OVC must complete and submit monthly Job Notices on forms provided by the Funds. The Job Notices shall contain jobs awarded and jobs on which OVC is currently working. The Job Notices shall be emailed to Patrick T. Wallace (patrickw@chilpwf.com) and jbarrera@liunachicago.org. OVC shall provide the Job Notices for the next 12 months and failure to timely provide accurate Job Notices shall constitute a default of this Agreement.

14.    Default.

    (a)    Should OVC fail to make any payment as provided under Paragraph 1 and 2 above or fail to remain in good standing including the timely submission and payment of benefit and dues reports or obtaining and maintaining a $200,000.00 surety bond as identified in Paragraph 5 above, the Funds and/or Union shall notify the Company in writing of its failure to make payment and demand such payment. If payment is not received within thirty (30) days of the date of notice, OVC is in default of its obligations under

this Agreement, and the Funds and./or Union may reinstate their District Court Case or Grievances against OVC to collect the balance of One Million Six Hundred Ninety Thousand Seven Hundred Ten and 92/100 Dollars ($1,690,710.92) due from OVC minus payments made by OVC pursuant to this Agreement, if any.

(b)     If OVC fails to correct the default within sixty (60) days, OVC agrees that the amount of $1,690,710.92 minus payments made to date shall become due and may be immediately collected from OVC by the Funds and Union.

15.     This Agreement shall be binding upon the heirs, successors, and assigns of the parties hereto. However, neither this Agreement nor its terms shall be construed as, or relied upon as, precedent as to the application of the relevant collective bargaining agreements or future dealings between the parties.

16.     The persons signing below represent that they are authorized to execute this Agreement and bind their respective entities and themselves to the terms hereof.

17.     This Agreement constitutes and represents the complete and entire agreement between the Parties. The terms of this Agreement may not be altered, modified, or supplemented except by a writing signed by each of the Parties.

18.     The Parties confirm and agree that: (a) this Agreement is the result of negotiation and compromise; (b) in interpreting this Agreement, no Party shall be considered to be the drafter of it; (c) no language shall be strictly construed against any Party; and (d) this Agreement shall be interpreted consistent with the ordinary and reasonable meaning of the words used in it.

19.     The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, final settlement and release of all claims, complaints, grievances or disputes covered by this agreement in the absence of fraud or duress.

20.     This Agreement may be executed in multiple counter parts with a facsimile copy signature or scanned/emailed copy signature as binding as the original.

21.     This Agreement shall be construed in accordance with Illinois law without regard to choice of laws, except as preempted by applicable federal law.

**For the Laborers' Pension Fund, the Laborers' Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, not individually but as Administrator of the Funds.**

**[SIGNATURES ON FOLLOWING PAGE]**

_Catherine Wenskus_       Date: _11/15/21_
Catherine Wenskus, Administrator

For the Construction and General Laborers' District Council of Chicago and Vicinity

_Martin Flanagan_       Date: _11-15-21_
Martin Flanagan

Ray Anderson Enterprises, Inc., and Old Veteran Construction, Inc., formerly d/b/a Old Veteran Tuckpointing Inc.

_Jose Maldonado_       Date: _10-28-21_
Jose Maldonado

Page 7 of 7

## Old Veteran Construction, Inc.
### Summary of Wage Payments Made

| PAYEES | TOTAL GROSS WAGES |
|---|---|
| payee 1 | $ 845.60 |
| payee 2 | $ 21,893.33 |
| payee 3 | $ 9,557.55 |
| payee 4 | $ 13,552.00 |
| payee 5 | $ 8,507.10 |
| payee 6 | $ 1,066.24 |
| payee 7 | $ 52,433.60 |
| OTHER | |
| payee 8 | $ 3,268.50 |
| payee 9 | $ 188,876.08 |
| TOTAL | $ 300,000.00 |

| Payees | Paid: 1/20/2022 | Paid: 2/16/2022 | Paid: 4/20/2022 | Paid: 6/29/2022 | Paid: 10/5/2022 | Paid: 1/1/2023 | Paid: 4/26/2023 | Paid: 8/18/2023 | Total Wages Paid |
|---|---|---|---|---|---|---|---|---|---|
| payee 1 | | $ - | | $ 845.60 | | | | $ - | |
| payee 2 | $ 12,847.44 | $ 394.30 | | $ 394.30 | $ 394.31 | $ 394.31 | $ 394.31 | $ 788.62 | |
| payee 3 | $ 5,608.56 | $ 172.14 | | $ 172.14 | $ 172.13 | $ 172.13 | $ 172.13 | $ 344.27 | |
| payee 4 | $ 7,952.58 | $ 244.08 | | $ 244.08 | $ 244.08 | $ 244.08 | $ 244.08 | $ 488.15 | |
| payee 5 | $ 4,992.14 | $ 153.22 | | $ 153.22 | $ 153.22 | $ 153.22 | $ 153.22 | $ 306.42 | |
| payee 6 | $ 1,066.24 | | | $ - | $ - | $ - | $ - | $ - | |
| payee 7 | $ 1,918.35 | | $ 30,769.09 | | $ 944.35 | $ 944.35 | $ 944.35 | $ 1,888.70 | |
| payee 8 | $ - | $ 58.85 | | $ 58.85 | $ 58.85 | $ 58.85 | $ 58.85 | $ 117.72 | |
| payee 9 | | $ 8,233.06 | | $ 8,233.06 | $ 8,233.06 | $ 8,233.06 | $ 8,233.06 | $ 16,466.12 | |
| | $ 34,385.31 | $ 9,255.65 | $ 30,769.09 | $ 10,101.25 | $ 10,200.00 | $ 10,200.00 | $ 10,200.00 | $ 20,400.00 | $ 135,511.30 |

Ex B-2